UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

TRUSTEES OF THE PAVERS AND ROAD
BUILDERS DISTRICT COUNCIL
WELFARE, PENSION, ANNUITY, AND
APPRENTICESHIP, SKILL IMPROVEMENT
AND SAFETY FUNDS and THE HIGHWAY,
ROAD AND STREET CONSTRUCTION
LABORERS LOCAL UNION 1010,

              Plaintiffs,

  -against-

PEDUTO CONSTRUCTION CORP.,

              Defendant.

**REPORT & RECOMMENDATION**
**19 CV 2306 (KAM)(LB)**

------------------------------------------------------------X

**BLOOM, United States Magistrate Judge:**

      Plaintiffs, Trustees of the Pavers and Road Builders District Council Welfare, Pension, Annuity, and Apprenticeship, Skill Improvement and Safety Funds (the "Funds") and the Highway, Road and Street Construction Laborers Local Union 1010 (the "Union"), bring this action against defendant, Peduto Construction Corp. ("Peduto"), pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*. ("ERISA") and the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185 *et seq*. ("LMRA").

      Despite proper service of the summons and complaint, defendant has failed to plead or otherwise defend this action. Plaintiffs now move for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. The Honorable Kiyo A. Matsumoto referred plaintiffs' motion for a default judgment to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that plaintiffs' motion for a default judgment should be granted in part and denied in part and a default judgment

1

in the amount of **$365,189.17**, plus daily prejudgment interest, should be entered against defendant. Plaintiffs' request for $2,186.29 in interest on late payments, as well as the request for $70.65 for the cost of postage and the process server, should be denied with leave to supplement the record within fourteen days of this Report and Recommendation.

## BACKGROUND[1]

The Funds are employer and employee trustees of multi-employer labor-management trust funds organized and operated in accordance with Section 302(c) of the LMRA. Compl. ¶ 4. The Funds are employee benefit plans within the meaning of Section 3(3) of the ERISA and are administered in Whitestone, New York. Id. The Union is a labor organization within the meaning of the LMRA and it maintains its principal place of business in Whitestone, New York. Id. ¶ 5. Peduto is a New York corporation engaged in the construction business with its principal place of business in New Rochelle, New York. Id. ¶ 6. On July 16, 2018, defendant entered into a collective bargaining agreement with the Union which is currently in effect and has not been voided by the parties. Id. ¶ 7; ECF No. 12-1, Collective Bargaining Agreement ("CBA"). Defendant agreed to be "bound by all of the terms and conditions of the Agreements and the Declarations of Trust . . . which . . . are hereby made part of this [CBA] and are incorporated herein[.]" Compl. ¶ 12; CBA at 24; see also ECF No. 13-1, Pavers and Road Builders District Council Annuity Fund, The Plan ("Trust Agreements"); ECF No. 13-2, Policy for Collection of Delinquent Fringe Benefit Contributions ("Collection Policy").

---

[1] The facts are drawn from the uncontested allegations in plaintiffs' complaint, as well as documents incorporated by reference, and are taken as true for the purposes of deciding this motion. See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment); Gesualdi v. Interstate Masonry Corp., No. 12-CV-0383 (NGG)(VMS), 2014 WL 1311709, at *3 n.1 (E.D.N.Y. Mar. 28, 2014) (relevant CBAs were deemed incorporated by reference into the complaint).

The CBA requires defendant to: (1) remit specified contributions to the Funds based upon "all work performed within the trade and geographical jurisdiction of the Union" ("Covered Work") and to (2) submit paperwork reporting the number of hours of Covered Work performed by its employees within thirty-five days after the end of the month in which the work was performed. Compl. ¶¶ 8–9; CBA at 24–26.

Pursuant to the CBA, plaintiffs conducted an audit of defendant's books and records for the period of July 1, 2014 through June 30, 2017 to determine whether defendant had made the required payments. Compl. ¶ 18; CBA at 29–30. The audit revealed that defendant owed plaintiffs ERISA contributions of $435.27 and non-ERISA contributions (union assessments and dues checks-off) totaling $29.49. Compl. ¶¶ 19–20. Plaintiffs allege that defendant is also liable for the $1,427.00 incurred for the cost of the audit. Id. ¶ 20; Collection Policy at 3. Defendant has not paid any portion of the deficiency identified by the audit. Compl. ¶ 21.

Plaintiffs also allege that defendant failed to submit its remittance and contribution reports from May 2018 and August 2018 through February 2019, and therefore owes an unknown amount of contributions for those months, as well as interest on late payments for June and July 2018 totaling $2,186.29. Id. ¶¶ 23–24.

## PROCEDURAL HISTORY

Plaintiffs filed the instant action on April 19, 2019. ECF No. 1. Plaintiffs served the summons and complaint on defendant on April 25, 2019 by personally serving Sue Zouky, defendant's designated authorized agent in the Office of the Secretary of State of New York. ECF No. 7. Plaintiffs allege that defendant's failure to make contributions and other payments violates defendant's contractual and statutory obligations under the CBA, the ERISA, and the LMRA. Defendant failed to respond to plaintiffs' complaint. At plaintiffs' request, the Clerk of Court noted

entry of default against defendant on July 1, 2019. ECF No. 9. Plaintiffs now move for a default judgment against defendant. ECF No. 11; ECF No. 16, Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment ("Memo").

## DISCUSSION

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for a plaintiff to obtain a default judgment. First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). A plaintiff may then move for a default judgment against a defendant. Fed. R. Civ. P. 55(b)(2). If a defendant fails to appear or fails to move to set aside the default under Rule 55(c), the Court may enter a default judgment on plaintiff's motion.

In light of the Second Circuit's "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored." Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95–96 (2d Cir. 1993). "Accordingly, plaintiff is not entitled to a default judgment as a matter of right simply because a party is in default." Finkel v. Universal Elec. Corp., 970 F. Supp. 2d 108, 118 (E.D.N.Y. 2013) (citing Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (courts must "supervise default judgments with extreme care to avoid miscarriages of justice")).

On a motion for a default judgment, the Court "deems all the well-pleaded allegations in the pleadings to be admitted." Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 108 (2d Cir. 1997); see also Universal Elec. Corp., 970 F. Supp. 2d at 119. Even though the pleadings are deemed admitted, the Court still has a "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief." Rolls-Royce

4

plc v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010) (citing Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)). In other words, "[a]fter default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." Id. (citation omitted). If the unchallenged facts establish defendant's liability, the Court then determines the amount of damages due. Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111).

In evaluating defendant's liability, the Court is limited to the four corners of the complaint. Rolls-Royce plc, 688 F. Supp. 2d at 153. The Court is not so restricted in determining damages, which may be calculated based on documentary evidence, affidavits, or evidence presented at a hearing on damages. See Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111.

**I. Defendant's Liability under the ERISA and the LMRA**

Plaintiffs' complaint establishes defendant's liability under the ERISA and the LMRA. Section 515 of the ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. "ERISA vests the Court with jurisdiction over civil actions brought by fiduciaries of employee benefit plans to enforce provisions of such plans." Trs. of the Local 7 Tile Indus. Welfare Fund v. City Tile, Inc., No. 10 CV 322 (SJ)(ALC), 2011 WL 917600, at *1 (E.D.N.Y. Feb. 18, 2011), adopted by, 2011 WL 864331 (E.D.N.Y. Mar. 10, 2011).

Here, plaintiffs allege that defendant is an "employer," and that the Funds are "employer and employee trustees of multiemployer labor-management trust funds," and "employee benefit plans" under the ERISA. Compl. ¶¶ 4, 7. Plaintiffs further allege that defendant was obligated to

make contributions to plaintiffs pursuant to the CBA and that defendant failed to make the required contributions. Id. at ¶¶ 7–9, 16, 21; CBA at 24–26. These factual allegations are sufficient to establish defendant's liability under the ERISA for the unpaid contributions.

Section 301(a) of the LMRA authorizes this Court to enforce the CBA. 29 U.S.C. § 185(a). Plaintiff Union is a labor organization within the meaning of the LMRA and defendant was obligated to make union assessments pursuant to the CBA. Compl. ¶¶ 5, 7; CBA at 24–26. Plaintiffs' uncontested allegations are sufficient to establish defendant's liability under the LMRA. See Finkel v. Allstar Elec. Corp., No. 11-CV-3222 (KAM)(RER), 2013 WL 4806951, at *4 (E.D.N.Y. Sept. 9, 2013) ("Plaintiff has established liability under Section 301 of the LMRA because it sufficiently pleads that [defendant] failed to remit the Required Contributions in accordance with their obligations under the CBAs.").

Plaintiffs' complaint sufficiently establishes defendant's liability under the ERISA and the LMRA. Therefore, I respectfully recommend that the Court should grant plaintiffs' motion for a default judgment.

## II. ERISA Damages

A defendant's default amounts to admission of liability for all well pleaded factual allegations in the complaint, *except* those relating to damages. Credit Lyonnais Sec. (USA), Inc., 183 F.3d at 155 ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true."); Greyhound Exhibitgroup, Inc. v. E.L.U.L Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992) ("While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages."). To determine the amount of damages, the district court "may conduct hearings or make referrals," Fed. R. Civ. P. 55(b)(2), but "[d]etailed affidavits

6

and other documentary evidence can suffice in lieu of an evidentiary hearing." Chanel, Inc. v. Louis, No. 06-CV-5924 (ARR)(JO), 2009 WL 4639674, at *4 (E.D.N.Y. Dec. 7, 2009) (citing Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991)). On a motion for a default judgment, a plaintiff has the burden to prove damages to the Court with a "reasonable certainty." Credit Lyonnais Secs. (USA), Inc., 183 F.3d at 155 (citing Transatlantic Marine Claims Agency, Inc., 109 F.3d at 111)).

Plaintiffs request $362,309.91 in damages in addition to $6,302.65 in attorney's fees and costs. Memo at 13. In support of their application for damages, plaintiffs submit the following:

1. Declaration of Keith Loscalzo, an officer of the Union, ECF No. 12 ("Loscalzo Decl.") which attaches the parties' CBA for the period of July 1, 2018 to June 30, 2021, ECF No. 12-1;
2. Declaration of Joseph Montelle, Administrator of the Funds, ECF No. 13 ("Montelle Decl.") which attaches
   - the parties' Trust Agreements effective January 1, 2014, ECF No. 13-1;
   - the parties' Collection Policy, ECF No. 13-2;
   - defendant's remittance reports for July 2017 and September 2017 through July 2018, ECF Nos. 13-3–13-4; and
   - a spreadsheet of the estimated delinquent benefit contributions for August 2018 through February 2019, ECF No. 13-5;
3. Declaration of Robert Castiglia, partner at the accounting firm of Castiglia, LLP, retained by plaintiffs to conduct an audit of defendant's records, ECF No. 14 ("Castiglia Decl.") which attaches the audit report ("Audit Report"), ECF No. 14-1;
4. Declaration of Adrianna R. Grancio, plaintiffs' counsel, ECF No. 15 ("Grancio Decl."), which attaches
   - the summons and the complaint, ECF No. 15-1;
   - an affidavit of service of process, ECF No. 15-2;
   - a certificate of default against defendant, ECF No. 15-3;
   - a spreadsheet of the interest on the June and July 2018 late payments generated by Zenith American Solutions Inc. (the Funds' third-party administrator), ECF No. 15-4; and
   - plaintiffs' counsel's contemporaneous time records, ECF No. 15-5.

Reviewed together, plaintiffs' submissions are sufficient for the Court to calculate damages with reasonable certainty. No evidentiary hearing is needed.

**A. Unpaid Contributions**

Pursuant to 29 U.S.C. § 1132(g)(2)(A), plaintiffs are entitled to recover unpaid contributions that defendant was required to make, but failed to pay, in accordance with the CBA. Compl. ¶¶ 21, 23; Loscalzo Decl. ¶ 6; CBA at 24–26.

**i. Audit Findings**

Plaintiffs seek $435.27 in unpaid contributions as revealed by the Audit Report. Memo at 6, 10; Compl. ¶ 19; Audit Report at 3. The auditors reviewed defendant's books and records, specifically the "contribution reports, individual earning records, tax returns, and W-2 forms[,]" from July 1, 2014 to June 30, 2017 to determine whether defendant made the appropriate ERISA and non-ERISA contributions. Castiglia Decl. ¶¶ 4–6. After analyzing defendant's documents, the auditors determined that defendant had failed to remit contributions in connection with 20.75 hours of Covered Work, which, when multiplied by the applicable rates, amounted to a delinquency of $435.27. Id. ¶¶ 7–8; Audit Report at 2. Having reviewed the Audit Report and finding it accurate, it is respectfully recommended that the Court should award plaintiffs **$435.27** in unpaid contributions.

**ii. Projected Delinquency**

Plaintiffs also seek $272,112.68 in unpaid contributions for August 2018 through February 2019.[2] ECF No. 13-5. The Collection Policy provides that "[w]here an employer is two or more months delinquent in making its Contributions and has not submitted remittance forms . . . the Board [of Trustees of each Fund] may project as the amount of the delinquency the greater of (a) the average of the payments based on reports actually submitted by the employer for the last three

---

[2] The Memo requests $272,112.**65** as unpaid contributions, Memo at 6, 11, 13; however, there is a minor typographical error. The documents submitted by plaintiffs (and the Court's calculations) reflect that the amount of unpaid contributions should be $272,112.**68**, ECF No. 13-5.

8

(3) months for which payment and reports were submitted or (b) the average monthly payments based on reports actually submitted by the Employer for the last twelve (12) months for which payments and reports were submitted." Memo at 10; Collection Policy at 10. Furthermore, the projected delinquency "may be used as a determination of payments due for each delinquent month, and maybe used for the purposes of any lawsuit[.]" Memo at 10; Collection Policy at 10. The Funds analyzed remittance forms submitted by defendant for May 2018 through July 2018, the last three months for which payments and reports were submitted, to estimate the delinquent contributions for August 2018 to February 2019. Montelle Decl. at ¶¶ 14–15; ECF No. 13-4 at 2. Table A sets forth the Funds' calculation below.

Table A

| Month | Contribution Paid | Average Contribution of the 3 Months of Payments |
|---|---|---|
| May 2018 | $47,806.81 | |
| June 2018 | $42,350.20 | $41,134.40[3] |
| August 2018 | $33,246.20 | |

Of the $41,134.40 average monthly contribution, $38,873.24 is the amount attributable to unpaid contributions based on the rates in effect (the remainder is attributed to unpaid union assessments as discussed in Part III. B.). ECF No. 13-4. Accordingly, the Funds request $38,873.24 per month for August 2018 to February 2019, the seven months that defendant was delinquent, for a total of $272,112.68. Having reviewed the parties' Collection Policy and the supporting documents submitted, it is respectfully recommended that the Court should award plaintiffs **$272,112.68** in unpaid contributions.

---

[3] $41,134.40 average = ($47,806.81 (May 2018) + $42.350.20 (June 2018) + $33,246.20 (July 2018)) / 3 months.

The average of the last 12 months of payments would be $34,412.81. ECF No. 13-4 at 2. Pursuant to the CBA, plaintiffs are entitled to employ the greater of the 3-month average or the 12-month average; therefore they calculated the delinquency using the 3-month average. Montelle Decl. at ¶ 9; Collection Policy at 10.

9

### B. Interest

#### i. Interest on Late Payments

Plaintiffs request $2,186.29 in interest on late payments incurred in June and July 2018. Compl. ¶ 24; Memo at 8, 13. Other than listing the requested amount in the Memo and attaching a report from the Funds' third-party administrator, ECF No. 15-4, plaintiffs fail to explain how the amount was calculated (i.e. when the payments were due, how many days interest accrued, what interest rate was used to calculate the delinquency). Accordingly, I recommend that the request for $2,186.29 in interest on the late payments should be denied without prejudice with leave to supplement the record within fourteen days of this Report.

#### ii. ERISA Prejudgment Interest

Plaintiffs are entitled to prejudgment interest on the delinquent contributions. 29 U.S.C. § 1132(g)(2)(B). The ERISA provides that "[f]or purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of title 26." 29 U.S.C. § 1132(g)(2)(E).

Plaintiffs calculate the $10.65 daily interest rate by multiplying the $38,873.24 in estimated contributions due per month by the 10% annual interest rate provided for in the CBA, and then divide the amount by 365 days. ECF No. 13-5; Memo at 12; Montelle Decl. ¶ 8; Collection Policy at 3. Using the $10.65 daily interest rate, the interest due on defendant's delinquent ERISA contributions is as follows:

**Table B**

| Month | Payment Due By | Days Late[4] | Daily Interest | Total Interest Due |
|---|---|---|---|---|
| August 31, 2018 | October 5, 2018 | 304 | $10.65 | $3,237.60 |
| September 30, 2018 | November 4, 2018 | 274 | $10.65 | $2,918.10 |
| October 31, 2018 | December 5, 2018 | 243 | $10.65 | $2,587.95 |
| November 30, 2018 | January 4, 2019 | 213 | $10.65 | $2,268.45 |
| December 31, 2018 | February 4, 2019 | 182 | $10.65 | $1,938.30 |
| January 31, 2019 | March 7, 2019 | 151 | $10.65 | $1,608.15 |
| February 28, 2019 | April 4, 2019 | 123 | $10.65 | $1,309.95 |
| | | | Total Prejudgment Interest Due | **$15,868.50** |

ECF No. 13-5. Accordingly, I respectfully recommend that the Court should award plaintiffs **$15,868.50** in prejudgment interest on the unpaid contributions through August 5, 2019. Furthermore, I recommend that the Court should award plaintiffs an additional sum of interest on the unpaid contributions to be calculated at **$10.65 per day** from August 6, 2019 through the date judgment is entered by the Court.

### C. Liquidated Damages

Plaintiffs are entitled to liquidated damages on the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). The ERISA permits the Court to award liquidated damages equal to the greater of either: (1) the interest on the unpaid contributions; or (2) the amount designated by the CBA (up to 20% of the delinquent contributions). 29 U.S.C. § 1132(g)(2)(C)(i)–(ii). Plaintiffs request $54,422.54 in liquidated damages, as this amount is 20% of the $272,112.68 in unpaid contributions.[5] Memo at 6, 12; Collection Policy at 3. Having reviewed the applicable provisions

---

[4] Plaintiffs request prejudgment interest on the unpaid contributions from the payment due date to August 5, 2019. However, plaintiffs are entitled to prejudgment interest from August 6, 2019 to the date of judgment at the same rate of $10.65 per day.

[5] Plaintiffs' complaint lists the liquidated damages rate as 10%. Compl. ¶¶ 15, 25. This typographical error in plaintiffs' pleading should not be held to plaintiffs' detriment as the liquidated damages rate in the Collection Policy is clearly 20%. See Collection Policy at 3; ECF No. 13-5. Plaintiffs' counsel should take greater care to ensure the accuracy of its pleadings in the future.

of the CBA, it is respectfully recommended that the Court should award **$54,422.54** in liquidated damages in unpaid contributions to plaintiffs.

### D. Attorney's Fees

Plaintiffs are entitled to reasonable attorney's fees. 29 U.S.C. § 1132(g)(2)(D); Collection Policy at 3. Courts in this Circuit award attorney's fees to a prevailing party by calculating the "presumptively reasonable fee." Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 172 (2d Cir. 2009). The Court determines the presumptively reasonable fee by multiplying the number of hours the attorney spent on the litigation by "a reasonable hourly rate." Gesualdi v. Interstate Payroll Co., Inc., 2:14-cv-06780 (ADS)(SIL), 2019 WL 109379, at *7 (E.D.N.Y. Jan. 4, 2019) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). A reasonable rate is "the rate a paying client would be willing to pay," based on the "prevailing [hourly rate] in the community . . . where the district court sits." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008); see also Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984) ("[T]he requested rates [must be] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.").

After the reasonable hourly rate is determined, the Court multiplies that rate by the reasonable number of hours the attorney expended, to determine a presumptively reasonable fee. The party seeking fees bears the burden of establishing that the number of hours for which it seeks compensation is reasonable. Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994) (citing Hensley, 461 U.S. at 437). A request for attorney's fees must be "supported by contemporaneous time records that show, 'for each attorney, the date, the hours expended, and the nature of the work done.'" Bd. of Trs. of Pointers, Cleaners & Caulkers Welfare

Fund, Pension Fund and Annuity Fund v. Super Eagle Contracting Inc., No. 12-CV-0399 (KAM)(RER), 2013 WL 802034 at *4 (E.D.N.Y. Jan. 16, 2013), adopted by, 2013 WL 802847 (E.D.N.Y. Mar. 5, 2013) (quoting New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983)).

Hourly rates in the Eastern District of New York generally range "from $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates." Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D&A Bus Co., Inc., 270 F. Supp. 3d 593, 618 (E.D.N.Y. 2017) (collecting cases); see also Trs. of Metal Polishers Local 8A-28A Funds v. Nu Look Inc., No. 18-CV-3816 (PKC)(RLM), 2019 WL 3500908, at *5 (E.D.N.Y. July 31, 2019) (citations omitted); Trs. of Empire State Carpenters Annuity v. C.R. Edwards Constr. Co., Inc., No. 15-CV-5232 (KFB)(ARL), 2016 WL 6875969, at *5 (E.D.N.Y. Nov. 22, 2016). "Awards for paralegal fees in this district typically range from $70 to $90 per hour in ERISA default actions." Trs. of the Plumbers Local Union No. 1 Welfare Fund, Additional Security Benefit Fund, Vacation & Holiday Fund, Trade Education Fund v. Temperini Mech. Inc., No. 18 CV 2596 (AMD)(LB), 2020 WL 571680, *4 (E.D.N.Y. Jan. 13, 2020), adopted by, 2020 WL 565410 (E.D.N.Y. Feb. 5, 2020).

Plaintiffs are represented by Virginia & Ambinder, LLP ("V&A"). Plaintiffs request an award of $5,832.00 in attorney's fees for 40.6 hours expended at an hourly attorney rate of $250.00 and an hourly legal assistant rate of $80.00. Memo at 12–13; Grancio Decl. at 2–3. V&A associates Adrianna R. Grancio and Marlie Blaise worked on this case along with V&A partner Nicole Marimon. Grancio Decl. at 3. Ms. Grancio is a 2016 graduate of St. John's University School of Law whose primary practice is ERISA litigation. Id. Ms. Blaise is a 2018 graduate of Florida State University College of Law whose primary practice also is ERISA litigation. Id. Ms. Marimon is a

2014 graduate of Fordham University School of Law who works on ERISA collections actions. Id. Plaintiffs' counsels' hourly rates on this case are in line with awards in this District to counsel with comparable experience.

Plaintiffs also request fees for five unidentified legal assistants with the initials "TG," "MH," "PP," "EC," and "EB," at an hourly rate of $80.00. ECF No. 15-5; Grancio Decl. at 3. "When faced with fee requests for unidentified personnel, some courts have refused to award any such fees." Jean v. Auto and Tire Spot Corp., No. 09-CV-5394 (ARR)(RLM), 2013 WL 2322834, at *7 (E.D.N.Y. May 28, 2013) (citing Drozd v. Vlaval Constr., Inc., No. 09 CV 5122 (SJ), 2011 WL 9192036, at *20 (E.D.N.Y. Oct. 18, 2011) (declining to award fees for individuals working for a law firm where the fee application provided no names or information regarding their educational backgrounds or experience)); see also Gesualdi v. Magnolia ProTrucking Inc., No. 11-CV-4082 (ADS)(AKT), 2012 WL 4036119, at *10 (E.D.N.Y. Aug. 20, 2012), adopted by, 2012 WL 4035779 (E.D.N.Y. Sept. 11, 2012) (declining to recommend that fees be awarded for "unidentified individuals"). Other courts have selected a "reasonable rate" to award unidentified legal assistants and paralegals. Jean, 2013 WL 2322834, at *7 (reducing the hourly rate of unidentified paralegals from $125 to $75); see also Trs. of the Pavers & Rd. Builders Dist. Council Welfare v. Arbor Concrete Corp., No. 15 CV 2481 (FB)(RML), 2015 WL 9598872, at *4 (E.D.N.Y. Dec. 15, 2015), adopted by, 2016 WL 67279 (E.D.N.Y. Jan. 5, 2016) (finding that the hourly rate of $80 requested for "unidentified legal assistants" to be reasonable). In the future, the Court advises plaintiffs' counsel to identify and provide each individuals' experience and background. That being said, I find the $80.00 hourly rate requested for the unidentified legal assistants in this case to be reasonable.

Having determined the hourly rates to be applied, I turn next to the reasonableness of the hours worked. Plaintiffs' counsel reports that a total of 40.6 hours (comprised of 15.2 attorney hours and 25.4 legal assistant hours) were expended on this case. Memo at 13; Grancio Decl. at 3; ECF No. 15-5. "[T]he number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or unnecessary." Finkel v. Metro. Sign & Maint. Corp., No. 09 CV 4416 (SJ), 2010 WL 3940448, at *16 (E.D.N.Y. Aug. 12, 2010), adopted by, 2010 WL 3927512 (E.D.N.Y. Oct. 5, 2010).

According to the billing records attached to Ms. Grancio's declaration, the 40.6 hours included drafting the complaint, attending conferences, reviewing court documents, drafting declarations, and preparing the motion for default judgment. ECF No. 15-5. The 40.6 hours spent on this litigation falls well outside the range considered reasonable for this type of action in this District, especially in light of plaintiffs' counsels' significant experience litigating ERISA cases and the straightforward nature of the default giving rise to this fee application. See Gesualdi v. Town Holding Corp., No. 18-CV-5744 (ARR)(RER), 2019 WL 5693803, at *8 (E.D.N.Y. Aug. 15, 2019), adopted by, No. 18-CV-5744, Electronic Order dated Aug. 30, 2019 (E.D.N.Y. Aug. 30, 2019) ("Although the [38.3 hours spent on the litigation] is not outrageous, it exceeds the typical expenditure of time claimed in ERISA cases resolved at the default judgment posture.") (citing cases); Trs. of Local 7 Tile Indus. Welfare Fund v. Larsen Marble & Tile, LLC, No. 18-CV-1025 (ARR)(SMG), 2018 WL 6363923, at *7 (E.D.N.Y. Nov. 19, 2018), adopted as modified by, 2018 WL 6344188 (E.D.N.Y. Dec. 5, 2018) (awarding V&A fees for 13.6 hours expended on an ERISA default as reasonable and collecting cases in which reasonable hours expended in similar cases were between 14 and 17.7 hours); Trs. of the Pavers and Rd. Builders Dist. Council Welfare, Pension, Annuity and Apprenticeship, Skill Improvement and Safety Funds v. Nus Constracting,

Inc., No. 17 CV 5037 (RID)(CLP), 2018 WL 4328829, at *7 (E.D.N.Y. Aug. 6, 2018), adopted by, No. 17 CV 5037, ECF No. 27 (E.D.N.Y. Sept. 11, 2018) (awarding V&A fees for 20.5 hours of work in a similar ERISA default); Trs. of Local 7 Tile Indus. Welfare Fund v. Tuscany Tile & Stone, Inc., No. 16 CV 1641 (LDH)(LB), 2017 WL 3173015, at *6 (E.D.N.Y. Feb. 15, 2017), adopted by, 2017 WL 3172997 (E.D.N.Y. July 25, 2017) (awarding V&A fees for 21.5 hours of work in a similar ERISA default); Gesualdi v. Interstate Masonry Corp., No. 12-CV-0383 (NGG)(VMS), 2014 WL 1311709, at *13 (E.D.N.Y. Mar. 28, 2014) (finding 23 hours spent on an ERISA default reasonable and collecting cases in which reasonable hours expended ranged from 14 to 28 hours).

Based on my review of this case and the billing records provided, I respectfully recommend a 20% reduction of the $5,832.00 requested in attorney's fees. Accordingly, the Court should award **$4,665.60** in attorney's fees to plaintiffs.[6] See Town Holding Corp., 2019 WL 5693803, at *8 (reducing requested fees by 20% in a similar ERISA default in part because counsels' "efficiency was not commensurate with their experience levels[.]"); Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund, 270 F. Supp. 3d at 624–28 ("[I]f upon review of the contemporaneous time records the court 'determines that the number of hours expended was excessive, redundant or otherwise unnecessary, the court [in its discretion] may . . . account for such over-billing in an across-the-board percentage deduction.'") (citations omitted) (reducing requested fees for 32.7 hours of work in a similar ERISA default by 10%).

### E. Audit Fees

Plaintiffs request $1,427.00 for the cost of the audit in accordance with the applicable provisions of the CBA. Memo at 6, 13; Collection Policy at 3. Courts may award "such other legal

---

[6] I take no pleasure in recommending a reduction in fees. However, plaintiffs' counsel must take responsibility for demonstrating why the number of hours spent on this case falls well outside the range generally considered reasonable.

or equitable relief as the Court deems appropriate," 29 U.S.C. § 1132(g)(2)(E) and regularly award reasonable audit costs. See, e.g., Gesualdi v. Andrews Trucking Corp., No. 09 CV 565 (SLT)(RML), 2010 WL 2292218, at *7 (E.D.N.Y. May 14, 2010), adopted by 2010 WL 2292392 (E.D.N.Y. June 3, 2010) (awarding plaintiffs $13,382.50 in audit fees). "Requests for audit fees must be supported by records . . . sufficient to allow the court to determine the reasonableness of audit costs." Trs. of Steamfitters' Local Union No. 638 v. Nexus Mech., Inc., No. 08-CV-3214 (RRM)(MDG), 2014 WL 1338377, at *8 (E.D.N.Y. Apr. 2, 2014) (internal quotation marks and citations omitted). "The evidence in support of recovering audit fees must include, at a minimum, some breakdown of the auditors' rates charged and hours expended." Gesualdi v. Diversified Carting, Inc., No. 10-2561 (SIL), 2014 WL 5475357, at *3 (E.D.N.Y. Oct. 29, 2014) (internal quotation marks and citation omitted).

Here, auditors worked 16 hours to prepare the Audit Report at an hourly rate of $85.00. Castiglia Decl. at 3. Plaintiffs' invoice reflects that the cost of the audit performed by Castiglia, LLP was $1,427.00. Audit Report at 11. Accordingly, I respectfully recommend that plaintiffs should be awarded **$1,427.00** for the cost of the audit.

**F. Costs**

"In a successful action under ERISA to recover delinquent contributions, courts award '[r]easonable and identifiable out-of-pocket disbursements ordinarily charged to clients.'" Trs. of Plumbers Local Union No. 1 v. Temperini Mech., Inc., No. 12 Civ. 05646 (ILG)(SMG), 2014 WL 4678025, at *4 (E.D.N.Y. Sept. 19, 2014) (quoting Trs. of the Rd. Carriers Local 707 Welfare Fund v. Goldberg, No. 08-CV-0884 (RRM)(MGD), 2009 WL 3497493, at *10 (E.D.N.Y. Oct. 28, 2009)). The party requesting reimbursement of its costs must provide the court with adequate documentation "not only showing costs were incurred, but that they were paid." Markey v. Lapolla

17

Indus., Inc., No. 12 CV 4622 (JS)(AKT), 2017 WL 9512407, at *8 (E.D.N.Y. Aug. 24, 2017), adopted by, 2017 WL 4271560 (E.D.N.Y. Sept. 26, 2017). Plaintiffs request $470.65 in costs, comprised of $400.00 for the filing fee, $0.65 in postage, and $70.00 for the process server. Grancio Decl. at 4; ECF No. 15-5 at 5. Although plaintiffs did not submit a receipt for the filing fee, the Court takes judicial notice of the $400.00 filing fee. See Annuity, Pension, Welfare, Training and Labor Mgmt. Cooperation Tr. Funds v. BKS-NY, LLC, No. 18 Civ. 0256 (LDH)(VMS), 2018 WL 4522103, at *12 (E.D.N.Y. Aug. 6, 2018), adopted by, No. 18 Civ. 0256 at Electronic Order dated Sept. 11, 2018 (E.D.N.Y. Sept. 11, 2018) (taking judicial notice of the $400.00 filing fee). Plaintiffs have not provided documentation of the $0.65 in postage or the $70.00 for the process server. Accordingly, I respectfully recommended that the Court should award plaintiffs **$400.00** in costs and should deny the request for $70.65 for the cost of postage and the process server without prejudice with leave to supplement the record within fourteen days of this Report.

### III.    Non-ERISA Damages

#### A. Audit Findings

Plaintiffs seek $29.49 in non-ERISA contributions for union assessments for July 1, 2014 to June 30, 2017 as revealed by the Audit Report. Compl. ¶ 19; Memo at 6, 10. Using the process discussed in Part II. A. i., the auditors determined that defendant owes $29.49 in unpaid union assessments. Having reviewed the Audit Report and finding it accurate, I respectfully recommend that the Court should award **$29.49** in unpaid non-ERISA contributions.

**B. Projected Delinquency**

Plaintiffs also seek $15,828.19 in non-ERISA contributions for union assessments for August 2018 through February 2019 pursuant to the terms of the CBA.[7] ECF No. 13-5. Using the process discussed in Part II. A. ii., plaintiffs determined that of the $41,134.40 monthly average contribution, $2,261.17 was attributable to unpaid union dues. ECF No. 13-5. Accordingly, the Funds request $2,261.17 per month for August 2018 to February 2019, the seven months that defendant was delinquent, for a total of $15,828.19. Having reviewed the parties' Collection Policy and the supporting documents, it is respectfully recommended that the Court should award plaintiffs **$15,828.19** in unpaid non-ERISA contributions.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiffs' motion for a default judgement should be granted in part and denied in part. A default judgment should be entered against defendant in the amount of **$365,189.17** reflecting the following awards to plaintiffs:

- $272,547.95 in unpaid ERISA contributions (comprised of $435.27 revealed by the audit and $272,112.68 in projected contributions)
- $15,868.50 in interest on the unpaid ERISA contributions (through August 5, 2019) and additional interest in the amount of $10.65 per day from August 6, 2019 through entry of judgment (as described in Part II. B. ii.)
- $54,422.54 in liquidated damages
- $15,857.68 in unpaid non-ERISA contributions (comprised of $29.49 revealed by the audit and $15,828.19 in projected contributions)
- $4,665.50 in attorney's fees
- $1,427.00 in audit fees
- $400.00 in costs

I further recommend that plaintiffs' request for $2,186.29 in interest on late payments, as well as the request for $70.65 for costs, should be denied with leave to supplement the record

---

[7] The Memo requests $15,828.**17** as unpaid union assessments, Memo at 6, 11, 13; however, the documents submitted by plaintiffs (and the Court's calculations) reflect that the amount requested should be $15,828.**19**, ECF No. 13-5.

within fourteen days of this Report. Plaintiffs are hereby ordered to serve a copy of this Report upon defendant at its last known address and to file proof of service with the Court forthwith.

### FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: February 27, 2020
       Brooklyn, New York